Good morning, Your Honors. My name is Malvina Nathanson. I represent Frank Giovinco, and I need to start with an apology for a big and embarrassing mistake in my reply brief in which I discuss, in two different places, in arguing that the prior conviction of Mr. Giovinco should not have been admitted, that that conviction was for extortion. It was not. It was for enterprise corruption, and I got off the track somewhere, and it was, as I said, it's embarrassing. Nobody goes through life undefeated. Now, you've argued in front of me over the 18 years many, many times, so from my standpoint, you're forgiven. But it's very nice of you to point that out. I think it actually was attempted enterprise corruption, if my memory is correct. Well, this one wants to be really technical, but it certainly wasn't extortion. All right. The government did argue that there were acts of extortion involved in that conviction. Maybe that's where I loused up, but in any case, I wanted to apologize, and I appreciate I'm not going to charge that minute to your time. Thank you. So it doesn't change the argument. With respect to the prior conviction and its introduction, although the labels are just similar, racketeering in the, what I'll call the current charges, and enterprise corruption or attempted in the prior charges, that's about the only similarity between the two convictions. The earlier conviction did not involve a labor union. It involved employees, employers, rather, and judges. Ms. Jensen, the whole issue of the prior conviction came into play because your client had a conversation with Mr. Fyfe about getting a job at the union, and the reason that Mr. Fyfe ultimately said no was because of the prior conviction and what attention that would bring. So wasn't the government entitled, first of all, to put that testimony and recording into evidence? Well, that was fine. But how could you possibly explain to the jury the circumstances surrounding that conversation without reference to the prior conviction? I don't understand how you could do that. I'm not sure why an explanation was necessary. The jury knew, and they knew it from the tapes, and they knew it from some testimony, that there had been a prior conviction and it was a potential obstacle to Mr. Giovanco getting a job. Why they needed to know exactly was the fact of the prior conviction, just not what it was about? Yes. It's the substance. It's the details about the prior conviction. No objection. I did not mean to raise any question about any of the other evidence that revealed that there had been a prior conviction, and, indeed, it did create a possible obstacle to Mr. Giovanco being hired by the union. The details, however, did not add anything to that scenario and weren't necessary for the jury to know. That may be if they were really curious, but that's not the test of relevance. So I underline that. What about on the issue of the enterprise, the existence of the enterprise and his membership in the enterprise? Why wouldn't it be relevant on that? They were completely different enterprises. The enterprise in the prior conviction was the Waste Association, this association of people who entered the contracts to dispose of waste. And the enterprise alleged in the current case. Well, it doesn't matter what the – even if it doesn't matter necessarily what the charge is. The testimony, I think you can correct me if I'm wrong, was that one of the co-conspirators in the earlier conviction was a captain in the Genovese family, right? Not a captain. Panisi, who was incarcerated with Giovanco after the – I don't think captain, but I'll – I'm not going to quibble about that. That's not important. He testified that one of Giovanco's co-defendants was a member of the Genovese family at that time 20 years ago. He didn't say the same thing about two other co-defendants. So if – I know, but he – your client told Panisi that he reported – when they had this conversation in jail after the conviction, he says, you know, I report to this person. I forget the name of the person. So why can't a jury rationally infer that one of the defendants was a made member of the Genovese family, and then in jail your client talks about reporting to – that it was all related to the Genovese crime. Why can't – I don't understand that that was the only view. Once again, Judge, I'm not complaining about Panisi's testimony. We're complaining about the conviction itself. And the information about the conviction contained more than – first of all, the fact that Giovanco – and we'll assume that Panisi was telling the truth, although I do not assume that for purposes of the argument, but even assuming he was telling the truth – that doesn't mean that the activity in which he engaged was as a member of the Genovese family. And there are two reasons for that. Number one, two of the other co-defendants in that case were not identified as members of the Genovese family, and so there's no reason to think that they were. So if two of the defendants were not Genovese family members, why was this a Genovese – necessarily a Genovese family enterprise? So you don't have to be a – excuse me. This is Judge Walker. You don't have to be a member of the Genovese family to be conspiring. They weren't identified with any connection at all to the Genovese family, so perhaps I overstated that. Well, there was a conspiracy involving two people, or at least arguably and inferentially, two people in the Genovese family, accompanied by two people who were not members of the family, formerly members of the family. It doesn't mean that it's irrelevant. But it doesn't mean that it's sufficient to get it into evidence, though. I'm not saying – I agree with you. There was something there, but not enough to get into evidence. The second reason that it wasn't enough is that, according to Carrillo, who was testifying as an expert in the way mobs work, families work, testified very clearly that members of families sometimes go off on their own. They commit crimes without the blessing of the family. If they're caught, they get penalized for it, but they do it. So it doesn't necessarily follow that because somebody is a member of the family, again, assuming that Panisci is telling the truth about what Giovinco said to him in their prison cell, it doesn't prove that it was the same enterprise. That's a piece of evidence. That's a piece of evidence, isn't it? And so it can be argued either way, and that's a question for the jury. Well, then it comes to the question of whether or not the probative value, which we argue was very, very, very limited, was prejudicial. And if it was, then even assuming that it was permissible as evidence, it was an abuse to allow it in because it was prejudicial. It was very, very – it was an extortion. It was Genevieve's family. It was his membership in it. And that's precisely what they were trying to prove, the government was trying to prove in the current charges. So we would argue that it was – and so – and it goes beyond. This is hard evidence of something. This is not a member of a different crime family who apparently does a lot of testifying on behalf of the government against other purported crime family members who might not be believed. This was a stipulation based on very hard evidence. So it would be very prejudicial on the question of whether or not there was an enterprise. And I would add also on the question of whether Genevieve was a member of that enterprise. So even granting it was sufficiently relevant to come into evidence, it was not sufficiently unprejudicial to warrant its introduction or not probative enough to warrant its introduction. And my time has expired. Yes, but you have three minutes in rebuttal. Thank you very much. All right, we'll now hear from the government. May it please the Court. My name is Kimberly Rabiner, and I represent the United States on appeal, as I did below. I want to pick up on one factual clarification following Pallant's argument. I think the concentration with respect to the prior conviction appears to fixate on the facts that were in the stipulation. The stipulation was the product of negotiation between the parties, and there were additional facts relating to that prior conviction that were put before Judge Marrero and then also Judge Rakoff at Docket 208 where the government set forth the detailed evidence presented at that underlying trial that linked the defendant to the Genovese crime family in connection with that case. So I wanted to clarify that for the Court. In sum, however, the defendant's conviction in this case was the result of overwhelming evidence that was captured on covert recordings, not any abuse of discretion or plain error in the district court's evidentiary rulings. Giobinco and his co-conspirators were caught red-handed on multiple recordings engaging in acts of extortion, seeking illegal kickbacks, and discussing their involvement in the Genovese crime family. It is that overwhelming evidence introduced at trial that similarly eviscerates the defendant's sufficiency arguments. I'm happy to address any questions that the Court may have. On the prior conviction, the argument that you heard Ms. Nathanson make with respect to the recording that you wouldn't need to go into the details, what's your response to that? I understand it was another purpose the government was seeking to use it for, but for purposes of the recording and the conversation with Mr. Fyffe and understanding the narrative, why would the details or what it was for be important? Your Honor, the details matter because they're necessary to explain statements made by Giobinco himself on those recordings. At one point, for example, Mr. Fyffe presses Giobinco for why he is insisting on obtaining a job at the labor union, and Giobinco cites that he has all of this prior experience, and he cites that he worked with the trade association in the past. You need to understand that that was part of Giobinco's criminal activity historically in order to understand the meaning of that reference. The fact that the carting industry has an interrelationship with the families, you're saying to understand the narrative or even understand some of the language that's used, you have to appreciate the fact of whether his relationship with the Genovese family. Is that it? Absolutely, Judge, because read in a vacuum without that information, the jury could be led to believe that Giobinco had some sort of industry experience to bring to the table, and that's not the case. What Giobinco was actually explaining is that he had experience fixing things for the Genovese crime family, pressuring people to make payments to the Genovese crime family, and that was the resume that he was pitching to Vincent Fyffe. He made other references to that as well, in which Fyffe asked him, well, how are you getting these payments? Did you do it with a strong arm? And Giobinco said, yes, that's what the industry was. So again, to kind of place that in context and understand what these two people are talking about in this conversation, in the central tension of the conversation, you need to be armed with those facts. And I take it your view is even without this, there was a multitude of evidence tying him both to the Genovese family and or to his extortion of the individuals, Fyffe and the other fellow. Yes, Your Honor. Even if you completely eliminated the entry of the stipulation into evidence regarding the details of the prior conviction, you would have had ample evidence for the jury's verdict in this case. Giobinco was caught on multiple recordings actually engaging in extortions, including of a different witness, Clifford Moss. He shook Moss down for a $5,000 payment in a parking lot, which was captured on video. That's right, Your Honor. He confronted him with records from the Department of Labor and demanded to know how much money Moss had earned from the union. And throughout all of this, it was clear Giobinco had no legitimate role to be following up on any of these questions. He was just there to shake Moss down for money in connection with other illegal kickbacks that Moss had paid in the past to a made member of the Genovese crime family. All right. I don't think there are any further questions. Thank you. Thank you. Thank you, Your Honor. The government asks that the judgment of conviction be affirmed. Thank you. Ms. Nathanson, you have three minutes. Thank you. Just a couple of quick points. I'm not sure if the government is arguing that because defense counsel signed the stip that he waived any complaint about it. I would just point out that he lost the argument about not admitting anything and presumably the stipulation was an attempt to cut down the damage that would result from the full, you know, whatever the government was intending to do with it. So I don't think that that can be held against the defense. I don't remember in the evidence, and perhaps it's cited in the government's brief and I just didn't pick up on it, anything that said that Giobinco was touting his experiences working with trade associations. What he talked about was his experience as a union organizer. So there was no connection between the resume that he brought forward and the earlier conviction. Another point about the stipulation, just to underline it, and it's in the brief, is that it's not only the facts of the stipulation but the fact that the evidence about the names of the co-defendants enabled Panisi to come up with his identification of one of them as a member of the Genovese family, which created the whole train of further inferences. Why would it be important to know that Mr. Fife's reason for turning him down was not just that he had a prior conviction but that it was for enterprise corruption? I would question whether that's why Fife turned him down. Fife said that this might be a problem. I think that the response was enough time has passed so that it isn't a problem any longer. Fife wasn't happy to have him, and what's interesting about that is that he didn't hire him. If this was some kind of a strong-arm operation going on, I can't imagine how come they didn't manage to make it happen. I know, but that's why the explanation is important. In other words, the government's whole theory of the case is that the Genovese family and the Cunha client were controlling the union, extorting Fife and others. Right. And if not, if the explanation doesn't come out that it was the reason he didn't hire him was not because he didn't fear the Genovese family. It was because he had this conviction. It was enterprise corruption, and that's going to make the union look terrible, that it was, you know, such an extreme situation that notwithstanding the pressure and control that the family had over the union, that was his reason. The jury, the government needs to explain that, in other words. But, you know, once again, the jury didn't need that complete stipulation in order to get that information about the fact that he'd been convicted of enterprise corruption. That was already in the record, and it was said as much as was needed to be said. I had one. The government has mentioned, used the phrase in this argument, that what Giovinco was really saying was, I have this experience with the trade, whatever. Again, that's very speculative as to what he was really saying. We know what he was saying because he's on tape, and it just isn't borne out by the tape. And I think I've actually overdone my reply time. All right. Thank you very much. I will stop here. Thank you very much. Thank you to both of you. Thank you. Have a good day. All of you, too. And stay well. You, too.